UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ESTATE OF DARIAN MACK, Deceased, by its Personal Representative, Margo Mack | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:12-cv-00141-TWP-DKL ) |
| JOHNSON COUNTY SHERIFF, and GERALD B. MADER, in his individual capacity as Johnson County Jail Physician, | ) ) ) ) |
| Defendants. | ) ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This action arises following the tragic death of Darian Mack ("Mr. Mack") while in custody of the Johnson County Sheriff's Department. This matter is before the Court on Defendant Gerald B. Mader's ("Dr. Mader") Motion for Summary Judgment (Dkt. 77). Additionally, Plaintiff, Estate of Darian Mack ("the Estate"), has filed a Motion for Leave to File Supplemental Response (Dkt. 104) and a Motion for Leave to File a Second Supplemental Response (Dkt. 108). For the reasons stated below, Dr. Mader's Motion is **DENIED**. The Estate's Motion's are also **DENIED**.

**I. BACKGROUND**

The following facts are undisputed for the purposes of summary judgment and considered in the light most favorable to the non-moving party, the Estate. On April 22, 2011, Mr. Mack was arrested on a parole violation and transported to the Johnson County Jail by Officer Mark Riley ("Officer Riley"). During transport, Mr. Mack was able to have a conversation with Officer Riley. Mr. Mack was assigned a cell in the G-Block of the Johnson County Jail.

On April 25 2011, at 1:00 a.m., Officer Chris Tielking ("Officer Tielking") performed a watch tour and observed Mr. Mack talking loudly in his sleep. Another inmate told Officer Tielking that Mr. Mack had been talking "crazy talk" and about bugs on the floor. Mr. Mack told Officer Tielking that he had not been feeling well earlier in the day, but he started to feel better around midnight. Officer Tielking called for assistance and Officer Eric Talley ("Officer Talley") and Officer Robert Willey ("Officer Willey") responded to his call. Officer Talley did not think Mr. Mack was well and believed he needed to be removed from general population; therefore, he transferred Mr. Mack from G-Block to a Holding/Detention cell ("HD cell"). At the time, Officer Talley did not believe Mr. Mack was suffering from a medical emergency which warranted emergency medical treatment.

At an unknown time during the morning of April 25, 2011, medical assistant Angela Ashbrook ("Ms. Ashbrook") reported to work at the jail. Ms. Ashbrook works at the jail as needed and for Family Physicians, a group medical practice which includes Dr. Mader. Ms. Ashbrook recognized Mr. Mack from prior detainments and was aware that he had an alcohol problem. She pulled his jail medical records which confirmed that Mr. Mack was an alcoholic and had previously gone through delirium tremens at the jail. Ms. Ashbrook examined Mr. Mack and noted that he was placed in an HD cell, had been hallucinating, admitted to consuming 8-10 beers plus shots each day, had a history of withdrawals and hallucinations in the past, has taken Librium at the jail in the past, and denied any other health problems. She recorded Mr. Mack's vital signs, including a blood pressure reading of 151/102 and a pulse of 99. Ms. Ashbrook testified that she telephoned Dr. Mader to inform him that Mr. Mack was exhibiting signs of delirium tremens, she provided him with Mr. Mack's elevated blood pressure and pulse readings, and advised him that Mr. Mack had been hallucinating. She initialed her notes

2

"GM/ASA," which stood for Gerald Mader and Angela S. Ashbrook. Further, she recorded that Dr. Mader ordered that Mr. Mack take 25mg of Librium. The Librium was ordered from CVS Pharmacy.

Sometime later on April 25, 2011, Mr. Mack fell to the floor in the HD cell while grasping his abdomen. He was then placed in a padded cell. Later in the evening of April 25, 2011, Ms. Ashbrook returned to the jail to pass out medications to the inmates. She noted that an officer informed her that Mr. Mack was moved to the padded cell because he was banging his head and had a bump on his forehead. She noted that Mr. Mack had not been vomiting, but was talking and hallucinating. Ms. Ashbrook gave Mr. Mack his first dose of Librium and noted he had bruises on his head and hands. He was speaking, but not clearly. She initialed this note "GM/ASA." At 10:00 p.m. on April 25, 2011, Mr. Mack was found unresponsive. Ms. Ashbrook noted that Mr. Mack was found on the floor with his eyes open, arms tense, normal pupils, and slight shakiness. She performed a sternal rub, to which Mr. Mack responded with moans. She applied smelling salts and Mr. Mack moved. Mr. Mack also blinked in response to "finger to eye." Ms. Ashbrook measured Mr. Mack's vital signs; his blood pressure reading was 110/76 and his pulse oxygen was 88%. He had grey coloring. She advised the officers to call 911. Oxygen was given to Mr. Mack until EMS arrived, at which time Mr. Mack was transported to Johnson Memorial Hospital.

After arriving at Johnson Memorial Hospital at 10:31 p.m., Mr. Mack was then transferred to Methodist Hospital in Indianapolis, Indiana. He arrived at Methodist Hospital on April 26, 2011, at 12:35 a.m. Mr. Mack died on April 26, 2011, at 1:20 a.m. An autopsy performed that day revealed that Mr. Mack died of blunt force trauma injuries due to a fall. Mr. Mack suffered injuries to his head, left flank, abdomen, and extremities.

Dr. Mader is a family physician who also works for the Johnson County Jail. He does not remember Ms. Ashbrook speaking to him on April 25, 2011 about Mr. Mack. He does not remember diagnosing Mr. Mack or prescribing Mr. Mack Librium. Dr. Mader testified that Ms. Ashbrook was not authorized to place his initials on any document or files.

The Estate of Darian Mack filed this 42 U.S.C. § 1983 action against multiple defendants, including Dr. Mader, alleging that they were deliberately indifferent to the serious safety and medical needs of Mr. Mack in violation of the Eighth Amendment of the United States Constitution. Dr. Mader has moved for summary judgment on this claim.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged

4

factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III.  DISCUSSION

Dr. Mader contends that the Estate's claim fails for two reasons:  (1) it cannot prove that Mr. Mack, at the time Ms. Ashbrook allegedly contacted Dr. Mader, was suffering from a serious medical condition, and (2) it cannot satisfy the subjective requirement that Dr. Mader acted with a sufficiently culpable state of mind.  For the reasons explained below, the Court finds that the Estate has established a genuine issue of material fact on both of these issues, precluding summary judgment on the claim.

**A.     Standard for Reviewing Deliberate Indifference Claims**

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  This Amendment imposes a duty upon the States, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 888–89 (7th Cir. 2002).  "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A claim of deliberate indifference to a serious medical need contains both an objective and a subjective element. *Id.* at 653.  Accordingly, to succeed on this claim, a plaintiff must demonstrate that (1) he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)); *see also*

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (articulating that "the deprivation alleged must be, objectively, 'sufficiently serious,'" such as prison official's act or omission resulting in the denial of 'the minimal civilized measure of life's necessities). Regarding the first prong, a medical condition is considered objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno*, 414 F.3d at 653). With respect to the second prong, an individual must have acted with "a sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834). Stated differently, the defendant must know of a serious risk to the prisoner's health, and he must consciously disregard that risk so as to inflict cruel and unusual punishment upon the prisoner. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (citing *Farmer*, 511 U.S. at 837–38).

### B.     Objectively Serious Medical Condition

As an initial matter, the Court agrees with the Estate that delirium tremens is a serious medical condition. *See Estate of Perry v. Boone Cnty. Sheriff*, No. 1:05-cv-1153-JDT-WTL, 2006 WL 1587799, at *3 (S.D. Ind. June 7, 2006) ("Several federal courts have recognized alcohol withdrawal and delirium tremens as objectively serious medical needs."). The Court also agrees that the Estate has established a disputed issue of fact as to whether Mr. Mack was suffering from this serious medical need. The officers that attended to Mr. Mack each testified that they believed he was suffering from delirium tremens and needed medical care during the morning of April 25, 2011. *See* Dkt. 79-5 at 9–10; Dkt. 89-3 at 6. The officers spoke with other inmates and observed Mr. Mack talking gibberish and acting abnormally. Ms. Ashbrook's reports contain evidence suggesting Mr. Mack was suffering from delirium tremens, including that he was a heavy drinker, had been hallucinating, and had above normal blood pressure and

6

pulse. This evidence establishes a disputed issue of fact as to whether Mr. Mack objectively suffered from a serious medical condition.

**C.     Deliberate Indifference**

Dr. Mader contends that he does not remember Ms. Ashbrook calling him on April 25, 2011, or speaking to him about Mr. Mack. However, the Court must interpret the facts in favor of the non-moving party, and thus must assume that Ms. Ashbrook did in fact call Dr. Mader and tell him about Mr. Mack's symptoms and vital signs. Given this and the evidence on record, the Estate has established a genuine issue of material fact as to whether Dr. Mader was deliberately indifferent to Mr. Mack's serious medical needs.

First, Ms. Ashbrook testified that she informed Dr. Mader of Mr. Mack's vital signs, that Mr. Mack had a history of delirium tremens, and was a heavy drinker and alcoholic. In response, Dr. Mader prescribed Librium, but did not order specific observation or that Mr. Mack be taken to the hospital. *See* Dkt. 89-1 at 11. Second, Dr. Mader testified that he was generally aware of the symptoms of delirium tremens, but does not treat the condition. Rather, he does prescribe medications to prevent the onset of delirium tremens, such as Librium. *See* Dkt. 79-11 at 7. He further testified that "somebody who is in true delirium tremens would be transferred to the emergency room," Dkt. 79-11 at 8, 26:12–13, and that when inmates are "in trouble" and jail personnel cannot handle their medical situation, inmates are sent to the emergency room. Dkt. 79-11 at 8, 26:18–19. Based on this evidence, and assuming for summary judgment that Ms. Ashbrook did speak to Dr. Mader about Mr. Mack's symptoms, the Estate has presented a disputed issue of fact that a reasonable jury could interpret to find that Dr. Mader knew Mr. Mack was suffering from delirium tremens, yet failed to order sufficient measures for Mr. Mack's safety and well-being. Dr. Mader's Motion for Summary Judgment is **DENIED.**

7

**D.      Expert Witness Declaration**

In its response to Dr. Mader's summary judgment motion, the Estate contends that the declaration of Dr. Anthony Dennis ("Dr. Dennis") should be excluded under *Daubert*. "Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007). "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id.* The Court is given latitude to determine "not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). "The court should [ ] consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.* Additionally, the district court must determine if the proposed testimony would assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (quoting *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 616 (7th Cir. 1993)). However, "[d]eterminations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Id.*

Dr. Mader argues that the Estate's objection is an improper motion to strike in violation of Local Rule 7-1(a), but the Court will consider objections to evidence relied upon in summary judgment motions. First, the Estate argues that Dr. Dennis' opinions are not supported by anything other than his own education or training and review of the materials and treatment described in the report. The Court finds that given the facts and circumstances of the issues before the Court, Dr. Dennis' experience as a physician and Allen County Jail doctor is sufficient

8

to support his status of expertise in this field. His review of the evidence in this case is also a reliable method. Dr. Dennis reviewed Mr. Mack's medical records, including records from the Johnson County Jail, Johnson County Memorial Hospital, Methodist Hospital, and the Marion County Coroner's Office. He further reviewed Dr. Mader's and Ms. Ashbrook's depositions, as well as discovery documents. The Court is satisfied that Dr. Dennis completed a reliable review of the evidence in this case, upon which he could render an opinion. Such reviews are often relied upon by courts. *See, e.g.*, *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006) (noting in an ERISA case that it is a "commonplace practice" for doctors to arrive at professional opinions after reviewing medical files). The Seventh Circuit has stated that through file reviews, "doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation." *Id.* Therefore, the fact that Dr. Dennis only reviewed the evidence in this case does not render his opinion unreliable. Finally, Dr. Dennis' opinion on the topic of treating delirium tremens in a jail setting would be helpful to a trier of fact. His declaration is not excluded, and to the extent the Estate objected to the declaration, this objection is **OVERRULED**.

E.     **Motions for Leave to File Supplemental Responses**

On January 15, 2014, the Estate filed a Motion for Leave to File Supplemental Response to Dr. Mader's Motion for Summary Judgment (Dkt. 104) and on January 27, 2014, filed a Motion for Leave to File Second Supplemental Response (Dkt. 108). The Court will address each motion in turn:

The first supplemental response (Dkt. 104) contains additional factual information from the deposition of Dr. Joseph Kenny ("Dr. Kenny"), which was taken on December 18, 2013. Dr.

Mader objects to the supplemental response, as it contains undisclosed expert opinions. The Court agrees. The Estate requests that the Court interpret its motion as a late expert disclosure. This issue is governed by Federal Rule of Civil Procedure 37(c)(1), which states that if a party fails to identify an expert witness, the opinion is excluded unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). The Estate argues that Dr. Mader opened the door to Dr. Kenny's expert testimony by seeking to extend the disclosure deadline until January 13, 2014, then deposing Dr. Kenny on December 18, 2013. Although this suggests a late disclosure would be harmless, it does not substantially justify the Estate's failure to timely disclose Dr. Kenny as an expert. It is well within Dr. Mader's litigation rights to depose a possible expert and subsequently refrain from using that expert. The Estate opportunistically seeks to use Dr. Kenny's testimony, but failed to timely disclose him as an expert and the "facts" contained within its supplemental response are opinion testimony. The Court will not consider the supplemental response and the Estate's motion is **DENIED**.

Additionally, the Estate has requested leave to file a second supplemental response to Dr. Mader's motion for summary judgment and suggestion that Dr. Mader withdraw his motion for summary judgment. The Estate proffers that in recent deposition testimony, "Dr. Dennis has stated that when plaintiff's facts are taken as true, then it his opinion that Defendant Mader was deliberately indifferent to Darian Mack's serious medical condition and was a responsible cause of Darian Mack's death." Given the Court's ruling herein, this Motion is **DENIED as MOOT.**

## IV. CONCLUSION

For the reasons stated above, there are genuine issues of disputed fact precluding summary judgment on the Estate's claim that Dr. Mader was deliberately indifferent, thus

subjecting Mr. Mack to cruel and unusual punishment resulting in his death. Therefore, Dr. Mader's Motion for Summary Judgment (Dkt. 77) is **DENIED**. Additionally, the Estate's Motion for Leave to File Supplemental Response (Dkt. 104) is **DENIED.** Finally, the Estate's Motion for Leave to File Second Supplemental Response (Dkt. 108) is **DENIED as MOOT**.

    **SO ORDERED.**

Date: 01/28/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel Benjamin Gearhart
SCHULTZ & POGUE LLP
dgearhart@schultzpoguelaw.com

Peter H. Pogue
SCHULTZ & POGUE LLP
ppogue@schultzpoguelaw.com

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com

Daniel Joseph Layden
WILLIAMS HEWITT BARRETT & WILKOWSKI, LLP
dlayden@wbwlawyers.com

William W. Barrett
WILLIAMS HEWITT BARRETT & WILKOWSKI LLP
wbarrett@wbwlawyers.com

John P. Young
YOUNG & YOUNG
john@youngandyoungin.com